THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                    Case No. 4:20-cr-00002-KGB

ODEH FAREED SAPHIEH                                                                          DEFENDANT

**ORDER**

Before the Court is defendant Odeh Saphieh's motion to suppress evidence (Dkt. No. 37). The United States filed a response in opposition to the motion (Dkt. Nos. 40, 41). The Court conducted a hearing on the motion at which the parties presented evidence (Dkt. Nos. 47-49). For the following reasons, the Court denies Mr. Saphieh's motion (Dkt. No. 37).

**I.      Factual Background**

Based on this Court's review of the dashcam video provided, the parties' briefing, and the hearing conducted before the Court, the Court recites this factual background. On December 4, 2019, at approximately 12:30 p.m., Arkansas State Police Corporal David Hamilton conducted a traffic stop of a white 2019 Ford Focus. Separate defendant Jaime Hernandez was the driver of the vehicle, and the only passenger in the vehicle was Mr. Saphieh. Cpl. Hamilton testified that he conducted the traffic stop after seeing Mr. Hernandez following another vehicle too closely. The dashcam footage shows the white Ford Focus merging left to avoid a stopped police vehicle and following the vehicle ahead closely. The white Ford Focus continued to follow the vehicle ahead closely even after merging back into the right lane.

After making the stop, Cpl. Hamilton approached the vehicle at the passenger side window. After informing Mr. Hernandez and Mr. Saphieh of the reason for the stop, Cpl. Hamilton asked

them for their information. They provided drivers' licenses and explained that the car was a rental. However, they were unable to produce the rental agreement.

Cpl. Hamilton then requested that Mr. Hernandez exit the vehicle and stand beside the passenger window of his patrol car while he ran a check on his license. While running his license, Cpl. Hamilton questioned Mr. Hernandez about his background and travel plans. Mr. Hernandez told Cpl. Hamilton that he worked at a stereo shop in California and that Mr. Saphieh was a friend whose family owned a small store in the same area. Mr. Hernandez further explained that the pair was visiting a friend in Memphis and would be staying there until "probably before Christmas." When Cpl. Hamilton asked Mr. Hernandez who the friend in Memphis was, Mr. Hernandez asked Cpl. Hamilton to repeat the question. Finally, after a pause, Mr. Hernandez replied that "they call him Derrick." After this exchange, Cpl. Hamilton asked Mr. Hernandez whether there were any firearms, bombs, or drugs in his vehicle. Mr. Hernandez replied that there were not. Cpl. Hamilton then asked for permission to search Mr. Hernandez's vehicle.

Mr. Hernandez questioned why Cpl. Hamilton wanted to search the vehicle, and Cpl. Hamilton explained that Mr. Hernandez seemed nervous and that his story was not adding up. He again asked for consent to search the vehicle, and this time Mr. Hernandez replied "yeah." Mr. Hernandez again questioned the reason for the search after Cpl. Hamilton asked for a confirmation of his consent. Before Mr. Hernandez responded, Cpl. Hamilton ordered him to step back from the passenger window of the patrol car. Cpl. Hamilton then left Mr. Hernandez by the patrol car with Arkansas State Police Trooper Tim Callison and proceeded to question Mr. Saphieh, who was still in the passenger seat of the Ford Focus. Cpl. Hamilton had called in Trooper Callison and his K-9 as backup during his conversation with Mr. Hernandez.

Cpl. Hamilton asked Mr. Saphieh who had rented the vehicle. Mr. Saphieh replied that Mr. Hernandez's wife had rented the vehicle. Cpl. Hamilton then asked Mr. Saphieh about his destination and plans, and Mr. Saphieh stated that they were going to Memphis for a wedding and only planned to stay for two days. Cpl. Hamilton then had Mr. Saphieh exit the vehicle.

Cpl. Hamilton now returned to Mr. Hernandez and asked him who rented the vehicle. Mr. Hernandez replied that a friend named Tomas had rented the car. Cpl. Hamilton then asked Mr. Hernandez a third time whether he would consent to a search of the vehicle, and this time Mr. Hernandez unequivocally told the officers to "search me." When the officers sought clarification that this consent included the vehicle, Mr. Hernandez assented again.

After Cpl. Hamilton began to search the vehicle, he found two backpacks and a large silver suitcase with a combination lock in the trunk. Cpl. Hamilton noticed that the suitcase was extremely heavy and felt as if it had a load of cinder blocks in it, which he found suspicious based on his previous experiences with loads of contraband. Mr. Hernandez claimed that the locked suitcase belonged to him and contained "my clothes and stuff." Cpl. Hamilton asked Mr. Hernandez for the combination to the suitcase, but Mr. Hernandez claimed he did not know the code. Cpl. Hamilton then used an upholstery tool to break open the suitcase. He felt hard packages wrapped in plastic inside the suitcase and immediately placed Mr. Hernandez and Mr. Saphieh under arrest. It was later determined that the suitcase contained approximately 26 pounds of marijuana and ten pounds of methamphetamine.

## II. Legal Analysis

Mr. Saphieh points to several alleged Fourth Amendment violations in support of his motion to suppress. First, he contends that the initial stop of the Ford Focus was illegal because Cpl. Hamilton did not have probable cause to believe that a traffic violation had occurred. Second,

he argues that the search of the vehicle was illegal because Mr. Hernandez did not voluntarily consent to the search. Finally, he argues that, even if Mr. Hernandez validly consented to the search of the car, the search of the locked suitcase was illegal because Mr. Hernandez's consent did not extend to the suitcase. The Court now examines each of these arguments in turn.

### A. Initial Traffic Stop

Mr. Saphieh alleges that the initial stop of the Ford Focus was not supported by probable cause of a traffic violation and was therefore illegal. The United States maintains that Cpl. Hamilton observed the white Ford Focus following another vehicle too closely in violation of Arkansas Code Annotated § 27-51-305, which provides in pertinent part:

> (a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having regard for the speed of vehicles and the traffic upon and the condition of the highway.

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Davis v. Dawson*, 33 F.4th 993, 997 (8th Cir. 2022) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir. 2008) (citing *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)). "Because a traffic stop is a seizure that implicates the Fourth Amendment, it therefore must be judged for its reasonableness in light of the circumstances." *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021). Binding precedent deems traffic stops reasonable when they are supported by either reasonable suspicion or probable cause. *Whren v. United States,* 517 U.S. 806, 810 (1996); *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012). Furthermore, "[a]ny traffic violation, however minor, provides probable cause for a traffic

stop." *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir. 1994) (en banc); *see also United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014). The government bears the burden of establishing that probable cause or reasonable suspicion existed at the time of the stop. *$45,000.00 in U.S. Currency*, 749 F.3d at 716; *see also United States v. Andrews,* 454 F.3d 919, 922 (8th Cir. 2006); *United States v. Wilson*, No. 5:18-cr-50092-2, 2019 WL 3322082, at *3 (W.D. Ark. July 24, 2019). When defendants challenge the existence of probable cause or reasonable suspicion, courts examine the "totality of the circumstances" to determine if probable cause or reasonable suspicion did, in fact, exist. *United States v. Pacheco*, 996 F.3d 508, 513 (8th Cir. 2021).

Further, the objective standard governing an officer's decision to stop a motorist protects officers who have a mistaken belief that a traffic law is being broken. *See $45,000.00 in U.S. Currency,* 749 F.3d at 715; *United States v. Sanders,* 196 F.3d 910, 913 (8th Cir. 1999) ("Even if the trailer was not technically in violation of the statute, [the officer] could have reasonably believed that the trailer violated the statute. . . ."). "Probable cause [also] exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." *United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020) (citing *Andrews*, 454 F.3d at 921). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop," and "[m]istakes of law or fact, if objectively reasonable, may still justify a valid stop." *Id.* (citing *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Id.* (citations omitted).

Although, as Mr. Saphieh contends, the dashcam footage shows that the white Ford Focus merged left to avoid a stopped law enforcement vehicle on the right highway shoulder, the footage also appears to show the car following the vehicle ahead closely and merging back into the right lane while maintaining a close proximity to the other vehicle.  Whether or not Mr. Hernandez's driving actually violated the statute, it was objectively reasonable for Cpl. Hamilton to believe that a traffic violation had occurred under these circumstances.  He thus had reasonable suspicion that the white Ford Focus had committed a traffic violation and was therefore entitled to conduct a stop of the vehicle.

### B. Mr. Hernandez's Consent

Mr. Saphieh urges that Mr. Hernandez's consent to the search of the vehicle was involuntary and that the search was therefore illegal.  He argues that Mr. Hernandez's initial assent was given in "a confused and uncertain tone" and that Mr. Hernandez was then "aggressively interrupted" by Cpl. Hamilton when he questioned the rationale for the search.  He further insinuates that Mr. Hernandez was made to step away from the patrol car's window in order to prevent Cpl. Hamilton's microphone from recording the conversation.  He thus attempts to distinguish the facts of this case from *Cedano-Medina*, where the responses of the suspect evolved from "initial hesitancy" to "eagerness to be cooperative." *United States v. Cedano-Medina*, 366 F.3d 682, 687 (8th Cir. 2004).  Mr. Hernandez's continued hesitancy and questioning, Mr. Saphieh's argument goes, demonstrate that he did not understand to what he was consenting.

The Fourth Amendment protects against unreasonable searches. U.S. Const. amend. IV. This right is violated "when government officers violate a person's 'reasonable expectation of privacy'" or gain information by means of a physical trespass. *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan,

J., concurring)); *see also United States v. Jones*, 565 U.S. 400, 407 (2012). Under the *Katz* privacy test, a claimant must show both "an actual (subjective) expectation of privacy, and. . . that the expectation [is] one that society is prepared to recognize as 'reasonable.'" *DE L'Isle*, 825 F.3d at 431 (quoting *Katz*, 389 U.S. at 361 (Harlan, J., concurring)). "A search is reasonable if the officer has a valid search warrant or if the search fits within a specific warrant exception." *Id.*

Any search "conducted pursuant to the knowing and voluntary consent of the person subject to a search" is valid under the Fourth Amendment. *United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021) (quoting *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005)). "As with most Fourth Amendment analyses," the voluntariness of consent is evaluated according to the totality of the circumstances. 11 F.4th at 904; *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Sanders*, 424 F.3d at 773; *Laing v. United States*, 891 F.2d 683, 686 (8th Cir. 1989). Courts thus consider such factors as: (1) the person's age, (2) the person's general intelligence and education, (3) the influence of drugs or alcohol, (4) whether *Miranda* rights have been given, and (5) prior familiarity with the legal system. *Sanders*, 424 F.3d at 773; *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). The environment in which the consent was secured must also be considered, including: (1) the length of detention prior to the consent, (2) whether officers "threatened, physically intimidated, or punished the suspect," (3) whether officers used lies or promises to obtain consent, (4) whether the suspect was in custody, (5) whether the consent was obtained in a public or private location, and (6) whether the defendant's reaction to the search was consistent with consent. *Sanders*, 424 F.3d at 773; *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001); *United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001).

Finally, consent is evaluated objectively, not subjectively, because "the Fourth Amendment requires only that the police reasonably believe the search to be consensual" given

the circumstances. *Cedano-Medina*, 366 F.3d at 685 (quoting *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998)).

Assuming for present purposes that Mr. Saphieh has standing to challenge the validity of Mr. Hernandez's consent to the search of the vehicle, the totality of the circumstances makes clear that Mr. Hernandez voluntarily consented. First, although Mr. Hernandez was hesitant and questioning after his initial consent to the search, the dashcam footage reveals that Cpl. Hamilton did not initiate a search until after asking Mr. Hernandez for consent a third time, at which point Mr. Hernandez unambiguously consented and affirmatively told the officers that they could initiate a search. Second, there are no special factors suggesting that these statements were made involuntarily. Mr. Hernandez was an adult, did not appear to have any trouble understanding Cpl. Hamilton, and did not appear to be under the influence of drugs or alcohol. Moreover, Cpl. Hamilton made no misrepresentations to Mr. Hernandez, told him plainly of his grounds for suspicion, did not threaten him in any way, and obtained his consent in a public area. Additionally, Mr. Hernandez and Mr. Saphieh failed to object to the search at any point thereafter.

*Cedano-Medina* does not support Mr. Saphieh's claims. In that case, Mr. Cedano-Medina, whose primary language was Spanish, had difficulty understanding the officer throughout his encounter with law enforcement. 366 F.3d at 684. Although he provided a series of "widely varying answers" to officer requests for consent to search his truck, the Eight Circuit concluded that Mr. Cedano-Medina had "decided to consent to something," even if it was unclear "whether or not he correctly understood what was being asked of him." *Id.* at 686-87. Under these circumstances, an officer could reasonably believe that Mr. Cedano-Medina's consent was voluntary. *Id.* at 687. By contrast, there is no indication here that Mr. Hernandez had any difficulty understanding Cpl. Hamilton or that his answers ever varied from his initial consent. There can

thus be little doubt that Mr. Hernandez's consent to the search of his vehicle was voluntary.

### C. Search Of Locked Suitcase

Mr. Saphieh next contends that, even if Mr. Hernandez voluntarily consented to the search of the vehicle, his consent did not extend to the search of the locked suitcase in the trunk. Cpl. Hamilton therefore could not have broken into the suitcase without additional consent or probable cause, according to Mr. Saphieh. In support of his argument, Mr. Saphieh cites dicta in Chief Justice Rehnquist's opinion in *Jimeno* stating, in pertinent part, that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk." *Florida v. Jimeno*, 500 U.S. 248, 251-252 (1991). However, the Court need not reach that issue here, as Mr. Saphieh lacks Fourth Amendment standing to challenge the search of the suitcase. In the alternative, the Court finds that Cpl. Hamilton had probable cause to search the suitcase for contraband.

### 1. Fourth Amendment Standing

"Fourth Amendment rights are personal rights that may not be asserted vicariously." *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004). Thus, to challenge a search on Fourth Amendment grounds, a defendant must establish a legitimate expectation of privacy in the area searched. *Id.*; *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *Barragan*, 379 F.3d at 529-530 (quoting *Gomez*, 16 F.3d at 256). The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched. *Gomez*, 16 F.3d at 256; *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir.1991). Relevant factors include: (1) ownership, possession and/or control of the area searched or item

seized; (2) historical use of the property or item; (3) ability to regulate access; (4) the totality of the circumstances surrounding the search; (5) the existence or nonexistence of a subjective anticipation of privacy; and (6) the objective reasonableness of the expectation of privacy considering the specific facts of the case. *Gomez*, 16 F.3d at 256.

Mr. Saphieh has not established a reasonable expectation of privacy in the suitcase. Mr. Hernandez claimed to the officers that the suitcase belonged to him and contained his clothes, and Mr. Saphieh never contradicted this assertion or claimed any possessory or privacy interest in the suitcase until after his arrest. Another person's luggage is an area in which one "simply would not normally have a legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 149 (1978).

Moreover, the facts of this case strongly resemble those of *Monie*, in which the Eighth Circuit found that the driver of a rental vehicle did not have standing to object to the search of two locked suitcases in the trunk of his vehicle. *United States v. Monie*, 907 F.2d 793, 793-794 (8th Cir. 1990). An individual known as B.C. had hired Monie to drive two locked suitcases from the West Coast to a destination in the Midwest. *Id.* at 793. When Monie was later pulled over for speeding, he disclaimed any interest in the locked suitcases and told the officers that he did not have the keys to open them. *Id.* at 794. When he later objected that his consent to search the vehicle did not extend to the locked suitcases, the Court found that Monie had no reasonable expectation of privacy in the suitcases because he "failed to establish he had a subjective expectation of privacy in the locked suitcases at the time of the challenged search." *Id.* at 795.

Like the defendant in *Monie*, Mr. Saphieh has failed to establish an expectation of privacy in the locked suitcase. Mr. Saphieh never claimed any ownership or interest in the suitcase and did not even have the capacity to open it. Additionally, Mr. Hernandez, the driver of the vehicle, expressly claimed ownership of the suitcase and its contents for himself – a claim which Mr.

Saphieh did not dispute at the time. Under these circumstances, Mr. Saphieh has not carried his burden of establishing Fourth Amendment standing to object to Cpl. Hamilton's search of the suitcase.

### 2. Probable Cause

"Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband." *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021) (quoting *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016)). The automobile exception to the Fourth Amendment's warrant requirement is grounded in the "ready mobility" of automobiles and their "pervasive regulation." *Id.* (quoting *Collins v. Virginia*, 138 S. Ct. 1663, 1669-1670 (2018)). Beyond the vehicle itself, it extends to containers within the vehicle where officers "have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Additionally, the "warrantless search of an automobile, predicated on consent, may be expanded beyond the scope of the consent when it yields a basis for a reasonable articulable suspicion that additional contraband may be found in parts of the car not included in the consent." *United States v. Alverez*, 235 F.3d 1086, 1089 (8th Cir. 2000) (quoting *United States v. Casares-Cardenas*, 14 F.3d 1283, 1286 (8th Cir.1994)).

In this context, "[p]robable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Keck*, 2 F.4th at 1089; *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017); *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003). This is a "practical and common-sensical standard" requiring only "the kind of fair probability on which

reasonable and prudent people, not legal technicians, act." *Murillo-Salgado*, 854 F.3d at 418 (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).

By the time that Cpl. Hamilton broke open the locked suitcase, he had probable cause to believe that it contained contraband. First, he had received contradictory answers from Mr. Hernandez and Mr. Saphieh as to who rented the vehicle, the purpose of their trip, and the length of their intended stay in Memphis. Second, Mr. Hernandez claimed that the suitcase contained his clothes, but Cpl. Hamilton testified that it was extremely heavy and felt as if it contained cinder blocks – something he had experienced before with loads of illegal contraband. Third, Mr. Hernandez claimed not to know the combination to open the suitcase, even though it supposedly belonged to him and contained his clothes. Under these circumstances and given Cpl. Hamilton's knowledge and experience with drug interdiction, there was certainly a "fair probability" that the suitcase contained illegal contraband.

*Alverez* presents an analogous case of a consensual search expanding into probable cause. 235 F.3d 1086. Mr. Alverez was approached by a State Trooper at a rest area adjacent to Interstate 80 in Nebraska. *Id.* at 1088. Mr. Alverez told the officer that he was on a trip from California to Chicago to visit his father for a few days but that he currently had a flat front tire and was waiting for his cousin to return with sealant. *Id.* Mr. Alverez then consented to a search of the vehicle, which turned up a spare tire that made "thudding noises" when shaken. *Id.* The Eighth Circuit found that the thudding noises produced by the tire, coupled with the fact that Mr. Alverez was not using the spare despite the flat front tire, gave the officer probable cause to cut open the spare tire to search for contraband. *Id.* at 1089.

Just as the thudding noises in the spare tire and Mr. Alverez's inexplicable failure to use it to replace the flat front tire gave the officer probable cause to search in *Alverez*, so too did Cpl.

Hamilton obtain probable cause to search the locked suitcase from its suspicious weight and feeling, along with the inconsistent and inexplicable explanations of Mr. Saphieh and Mr. Hernandez about the purpose of their trip, the contents of the suitcase, and their inability to provide access to the contents of the suitcase.

The United States also contends that, in the event that Mr. Saphieh has standing to object to the search of the suitcase and Cpl. Hamilton lacked probable cause to search, the evidence should nevertheless be admitted on grounds of inevitable discovery. However, in the light of this Court's rulings on standing and probable cause, the Court need not reach this issue and therefore expresses no opinion on the matter.

### III. Conclusion

For the foregoing reasons, the Court denies Mr. Saphieh's motion to suppress (Dkt. No. 37).

It is so ordered this 8th day of July, 2022.

_____
Kristine G. Baker
United States District Judge